STATE EX REL. FORRESTAL and another vs. ESCHWEILER, Circuit Judge.

*May 25—June 17, 1914.*

*Appeal: New trial after reversal: Duty of losing party: Right to dismissal: Waiver: Discretion.*

1. The words "unless . . . continued for cause" in sec. 3072, Stats., relating to dismissal of an action where the losing party fails to bring the cause to trial within one year after reversal of a judgment or order in his favor,—refer to a continuance preventing such party from bringing the cause to trial within the year, or to some excuse for the default.

2. The right to a dismissal under said statute is waived by conduct, prior to the application for a dismissal, inconsistent with intention to claim that right.

3. Upon a showing that the attorney for plaintiffs, whose judgments had been reversed, had good reason to believe and did believe that the statutory diligence in bringing the action on for a new trial would not be insisted upon, and that he relied thereon; that there was an agreement between counsel as to setting the causes down for trial some two months later than one year after the reversal; and that plaintiffs' attorney in good faith relied thereon and was proceeding diligently to bring in a nonresident whom he believed and had good reason

to believe both parties wished to have brought in as a defend-
ant, the trial court was warranted in refusing defendants' mo-
tions for dismissal under sec. 3072, Stats.

4. The fact that the alleged agreement between counsel was not
reduced to writing so as to be legally binding did not preclude
the trial court from giving effect to it in furtherance of justice.

MANDAMUS action to compel F. C. ESCHWEILER, judge of
the circuit court for Milwaukee county, to dismiss the action
of Emma Sellers, as administratrix of the estate of Joseph
Sellers, deceased, against *Forrestal* and *Downey,* pending in
said court, and like proceedings for similar relief in the ac-
tion of William Brey against the same defendants, also pend-
ing in said court.   *Dismissed.*

The deceased and Brey were injured by the explosion of
a boiler while they were in the performance of their duties as
employees of *Forrestal* and *Downey.*   Mr. Sellers died from
his injuries.   The two actions were commenced to recover
damages.   They were tried, resulting in a judgment against
defendants in each case.   Judgments were rendered accord-
ingly, from which appeals were taken to this court, resulting
in both judgments being reversed November 19, 1912.   The
actions not having been brought on for retrial nor any pro-
ceedings had therein in the circuit court within one year after
the reversals, motions were made on behalf of the defendants
for dismissals under sec. 3072, Stats.

Pending the decision of such motions applications were
made by plaintiffs for continuance of the actions.   On the
showing made on such motions the applications to dismiss
were denied, while those of plaintiffs were granted upon the
ground that defendants had waived the statutory privilege of
having the actions dismissed and were estopped by their con-
duct from insisting that plaintiffs were at fault in delaying
the time of retrial.   Thereupon alternative writs of *man-
damus* were duly issued out of this court to compel the circuit
judge to dismiss the actions, or show cause to the contrary.

The petitions for the writs showed the statutory requisites

for dismissal.   The circuit judge made due return thereto, showing his reasons for refusing to dismiss.   Such reasons were brought to his notice by affidavits on behalf of plaintiffs and were opposed by affidavits on behalf of defendants.   Such affidavits established, or tended to establish, these facts:

Upon the trial of the actions it pretty satisfactorily appeared, and largely by the testimony of Professor Cooley, Dean of the College of Engineering of the University of Michigan, who resided at Ann Arbor in said state,—that the bursting of the boiler was caused by a structural defect for which the manufacturer,—the Fairbanks Steam Shovel Company,—as was supposed, might be held responsible.   It was important to respondents to have such manufacturer as a defendant in each action, particularly because of improbability of a judgment against the employer being collectible.   It was likewise important for the latter to have the manufacturer before the court so as to settle the whole controversy in one trial. Both sides desired to have Professor Cooley attend upon a second trial as a witness.   Therefore, soon after the reversals, negotiations were commenced between the attorneys for the parties in respect to bringing in the Shovel Company as defendant in each action and sharing the expense of securing the presence of Professor Cooley as a witness.   The clerk's fees in the appellate court were paid and a return of the records to the circuit court seasonably secured.   The negotiations aforesaid continued for a considerable length of time, the attorneys for plaintiffs relying on the attorneys for defendants continuing to cooperate, to effect, in accomplishing what seems to be for the mutual interests.   The efforts in that regard caused delay in pressing for a new trial.   There was some uncertainty in the minds of the attorneys for the respective parties as to the proper course to pursue to bring in the Shovel Company, but responsibility in regard to the matter was cast on the attorneys for plaintiffs.   They finally prepared an amended complaint, setting forth appropriate matters, and served the same, as regards the existing defendants.   There was difficulty

in securing jurisdiction of the Shovel Company by reason of nonresidence. It was finally thought that such difficulty might be circumvented by attaching the credits of the Shovel Company in the hands of defendants. Up to this time many letters had passed between the attorneys and much negotiating been had, all of a nonadversary nature. The active attorney for plaintiffs was a member of the Wisconsin legislature which was in session from the early part of January, 1913, until well into the middle of the following summer. That interfered with speedily accomplishing what such attorney supposed both sides desired to bring about as regards the second trial. On account of his situation, it was understood, as he regarded the matter from conversations with an attorney for defendants that he would be accommodated and that such attorney would co-operate in having the cases placed on the following January calendar for trial. To that end, as plaintiffs' attorney understood the matter, in July, 1913, and while such attorney was still in performance of his official duties, it was agreed that the causes should not be taken up for trial until the January term, 1914, he being told by defendants' attorney that formal notice of trial would not be necessary and promised that, at a seasonable time, attorneys for the respective parties would jointly act in having the cases set down for trial. Plaintiffs' attorney relied on this in his subsequent course. He made service of the amended summons and complaint on one of defendants' attorneys, October 30, 1913. He immediately thereafter proceeded to prepare the necessary papers to obtain jurisdiction of the Shovel Company in the way it was understood should be pursued. He was proceeding in good faith in that regard when the notices to dismiss were given, which was two days after the year subsequent to the reversals. October 3d, before serving the amended papers, he sent to the attorney, upon whom he subsequently made the service, a stipulation in respect to the matter and thereafter, from time to time, urged its return

signed. It was not returned, but before service of the amended paper was made he was informed by one of defendants' attorneys that the reason why the matter had not been attended to was because no such stipulation was necessary. Some of the matters stated were, in whole or in part, put in issue or modified by a counter showing before the circuit judge and returned by him.

The return was demurred to for insufficiency.

*John J. Maher,* attorney, and *Thomas H. Gill,* of counsel, for the petitioners.

*D. D. Conway,* attorney, and *P. H. Martin,* of counsel, for the respondent.

MARSHALL, J.    Did the lower court err in refusing to dismiss the actions under sec. 3072, Stats., providing as follows:

"In every case in error or on appeal in which the supreme court shall order a new trial or further proceedings in the court below, the record shall be transmitted to such court and proceeding had thereon within one year from the date of such order in the supreme court, or in default thereof the action shall be dismissed, unless, upon good cause shown, the court shall otherwise order. It shall be the duty of the losing party in any action or proceeding when a judgment or order in his favor in the court below is reversed by the supreme court on the appeal of the opposing party to pay the clerk's fees on such reversal, procure the record in said cause to be remitted to the trial court and bring the cause to trial within one year after such reversal, unless the same be continued for cause, and if he fail so to do, his action shall be dismissed"?

That section, without change so far as concerns this case, has been in force for many years. It has been several times construed, particularly in *Raymond v. Keseberg,* 98 Wis. 317, 73 N. W. 1010; *Christianson v. Pioneer F. Co.* 101 Wis. 343, 77 N. W. 174, 917; *State ex rel. Mitchell v. Johnson,* 105 Wis. 90, 80 N. W. 1104; *Sutton v. C., St. P., M. & O. R. Co.* 114 Wis. 647, 91 N. W. 121; *Eisentraut v. Cornelius,* 147 Wis. 282, 133 N. W. 34.

The terms of the law are plain. The first clause, in the event of the record upon any appeal not having been transmitted to the trial court and proceedings had in the case in such court within one year after reversal, requires the cause to be dismissed "unless otherwise ordered" "for good cause shown." The duty to act is placed upon the court. It may be exercised without any motion in that regard, though a request and unreasonable denial thereof must precede coercion to secure action. The last clause of the section imposes the duty of procuring seasonable return of the record, and bringing the cause to trial within the year period on the losing party upon the appeal, unless the action "be continued for cause" and, in case of default, not characterized by "a continuance for cause" the duty devolves upon the court to dismiss "his action,"—evidently referring to such dismissal as will deny to the defaulting party further use of the court's jurisdiction in the action; but without prejudice to the party not in default. The court might "otherwise order" than to dismiss under the first clause of the section as regards the party not in default, and it might refuse to dismiss under the second clause, in case of a continuance, preventing the party upon whom the duty is imposed of bringing the cause to trial within one year after reversal. Just what will justify the court in retaining the action under either the first or second clause, need not be determined here. The words "unless continued for cause" in the second clause, doubtless refer to a continuance preventing the person whose duty it is to bring the cause for trial within the year period from doing so, or to some excuse for the default. What will so excuse in any particular case, as well as what will justify retention of the cause after the year period under the first clause must necessarily depend upon the particular facts of the particular case, though mere financial inability of the party required to be the actor in the matter would not suffice as the court has previously held.

That the right to dismiss under the statute may be lost by

waiver has been repeatedly held, as the cited cases amply show. What will so operate in any case must necessarily depend upon the characterizing circumstances. Conduct of the party, seeking to enforce the statute, prior to the application for a dismissal, inconsistent with intention to claim the statutory right, would, clearly, operate as a waiver upon the ground of an implied intention in that regard. Whether there has been such inconsistent conduct in any case would be dependable upon a determination of matters of fact and the application of sound judicial discretion thereto.

In these cases, as the trial court viewed the records, and had reasonable ground therefor, the active attorney for plaintiffs in the actions had good reason to believe, and did believe, that the statutory diligence in bringing the action on for a new trial would not be insisted upon, and he relied thereon,— moreover, that there was an agreement between counsel for the respective parties as to setting the causes down for trial some two months after expiration of the year period; that the attorney for the plaintiffs, in good faith, relied thereon and proceeded, diligently, under all the circumstances, to create a condition precedent to such trial which he believed, and had good reason to believe, that both sides desired to bring about.

The conclusions of the trial court respecting the controlling facts, not being contrary to the clear preponderance of the evidence, must be regarded as verities. That the alleged agreement between counsel was not reduced to writing so as to be legally binding, is of little consequence. If it were made, expressly or by implication from conduct, it was within the competency of the trial court to give effect to it in furtherance of justice. It follows, therefore, that the demurrers to the returns must be overruled and, as the whole subject on the merits is evidently before us, that the proceedings in each matter must be dismissed with costs.

*By the Court.*—So ordered.